UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------x

 STEVEN NUNEZ, a.k.a. "STEVEN CRUZ",

              Plaintiff,

        -against-                              **MEMORANDUM AND ORDER**
                                                18-CV-1757(EK)(VMS)
 METROPOLITAN LEARNING INSTITUTE, INC. and
 BORIS DAVIDOFF, individually,

              Defendants.


-------------------------------------------x
ERIC KOMITEE, United States District Judge:

        Plaintiff Steven Nunez brings this action against his

former employer — defendant Metropolitan Learning Institute,

Inc. ("MLI") and its CEO, Boris Davidoff — for alleged

violations of overtime, wage statement, and anti-retaliation

laws under the Fair Labor Standards Act ("FLSA") and the New

York Labor Law ("NYLL").[1]  Defendants move for summary judgment

on all claims.  For the reasons set forth below, the motion is

denied.

## I.  Background

        Defendant MLI is a "private, non-profit" organization

that offers post-secondary education programs at several

campuses in New York City.  Third Amended Complaint ¶ 27, ECF

------------------------

        [1] Plaintiff also went by "Steven Cruz" during the relevant time period,
and the "a.k.a." designation in the caption is his.

No. 93 ("Compl."). Plaintiff was employed at MLI from March 2006 through January 2018. *Id.* ¶ 30. His titles, at various times, included "Office Manager," "Bursar," "Quality Control Officer," and "[Financial] Aid Representative," Declaration of Steven Nunez ("Nunez Decl."), Ex. C, ECF No. 108, although he challenges the applicability of these labels to his actual work, Nunez Decl. ¶ 70. Plaintiff does not dispute that Defendants terminated him at least in part for engaging in a sexual relationship with a student, which he admittedly did. *Id.* ¶ 94 ("I had a consensual relationship with an adult student . . . while employed by MLI.").

Five months after Plaintiff commenced this action, Defendants sued Nunez in New York state court on claims related to that relationship. The state court dismissed MLI's complaint for failure to state a claim. MLI later filed an amended state-court complaint, which was also dismissed. In response to these lawsuits, Plaintiff amended his complaint in this action to add retaliation claims under the FLSA and NYLL.

Defendants now move for summary judgment on all claims. They argue that (1) Plaintiff was exempt from overtime pay requirements because of his managerial duties at MLI;[2] and

---

[2] Although Defendants do not move for summary judgment on Plaintiff's claims for failure to furnish wage information to employees under NYLL §§ 195(1) and 195(3), the "complete and timely payment of all wages due"

(2) he has not asserted the type of injury required to state a retaliation claim (i.e., harm to his career prospects).  As explained below, the Court denies the motion on both grounds.

## II.  Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "can affect the outcome under the applicable substantive law."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal citations omitted).  A genuine dispute is one that can "reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In performing this analysis, the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party.  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).  "If, in this generous light, a material issue is found to exist, summary judgment is improper."  *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).

---

is an affirmative defense to these claims.  *See, e.g.*, *Dudley v. Haznon Homecare Servs., Inc.*, No. 15-CV-8821, 2018 WL 481884, at *4 (S.D.N.Y. Jan. 17, 2018) (citing NYLL § 198(1-b)); *Suarez v. Big Apple Car, Inc.*, No. 15-CV-5330, 2017 WL 9400686, at *1 (E.D.N.Y. Dec. 1, 2017).  Because this question depends entirely on whether Plaintiff was exempt from the overtime rules, the resolution of Defendants' motion on the overtime claims will apply to these claims as well.

3

The moving party may establish that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998).  However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotations omitted).  If "no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (internal quotations omitted).

### III. Analysis

**A.   Wage Violations**

The Court first turns to Plaintiff's claims for violation of the overtime provisions.[3]  Under the FLSA, employers

---

[3] I note that Plaintiff failed to submit a Rule 56.1 counter-statement that complied with this District's Local Rules.  *See* E.D.N.Y. Local R. 56(b) (nonmovant must "respond[] to each numbered paragraph in the statement of the moving party"); *id.* at R. 56(d) (counter-statement must provide "citation[s] to evidence which would be admissible" following "each statement").  This is

must pay employees overtime compensation for time worked in excess of forty hours per week. 29 U.S.C. § 207(a). The same is true under the NYLL. *See Martinez v. Dannys Athens Diner Inc.*, No. 16-CV-7468, 2017 WL 6335908, at *2 (S.D.N.Y. Dec. 5, 2017) (the overtime pay requirements under these statutes are "identical").

Defendants contend that Plaintiff was exempt from these overtime requirements due to his position at MLI. The FLSA exempts certain employees based on their profession, job function, and other characteristics. In particular, there are exemptions for employees who work in a "bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), among other things.[4]

Defendants argue that Plaintiff falls within the "administrative" and "executive" exemptions.[5] The requirements

---

counsel's third violation of Court rules in connection with this one motion. *See* Order dated July 23, 2020. Although I exercise my "broad discretion" not to penalize Plaintiff for his counsel's errors, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001), Mr. Aronauer's repeated ignorance of Court rules is troubling.

[4] These exemptions are "substantially similar" in scope under the NYLL, so the Court considers them together. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012) (treating FLSA and NYLL administrative and executive exemptions as functionally equivalent); *Sethi v. Narod*, 974 F. Supp. 2d 162, 183-84 (E.D.N.Y. 2013) (administrative exemptions are "substantially similar" under both statutes); *Tomayo v. DHR Rest. Co.*, No. 14-CV-9633, 2017 WL 532460, at *5 & n.5 (S.D.N.Y. Feb. 3, 2017) ("The NYLL has a substantially similar overtime provision with an analogous exception for executives.").

[5] Defendants also argue that Plaintiff falls within the "combination" exemption, which "requires that an employee's primary duty involve a

for these exemptions differ in several respects, but both require a showing that the employee's "primary duty" involved certain managerial tasks.

The executive exemption, for instance, applies to an employee:

(1)    [Who is c]ompensated on a salary . . . at a rate of not less than $684 per week . . . ;

(2)    Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)    Who customarily and regularly directs the work of two or more other employees; and

(4)    Who has authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

And the administrative exemption applies to an employee:

(1)    [Who is c]ompensated on a salary . . . at a rate of not less than $684 per week . . . ;

(2)    Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

---

combination of exempt work" — i.e., work that qualifies for either the executive or administrative exemption, aggregated together. *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 223 (D. Conn. 2013) (quoting 29 C.F.R. § 541.708).

(3)   Whose primary duty includes the exercise of discretion
      and independent judgment with respect to matters of
      significance.

*Id.* at § 541.200.

These analyses, by their nature, are not often susceptible to resolution on motions for summary judgment. "Because inquiries into employees' FLSA-exempt status are fact-intensive, even where there has been full discovery, courts are often reluctant to grant summary judgment based on an FLSA exemption." *Sexton v. Am. Golf Corp.*, No. 13-CV-873, 2015 WL 5884825, at *3 (E.D.N.Y. Oct. 8, 2015) (quoting *Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, No. 12-CV-1054, 2015 WL 5439178, at *2 (S.D.N.Y. Sept. 15, 2015)).

The record here demonstrates why this is so.  On the one hand, several witnesses identified Plaintiff as a "manager," Defs' 56.1 Statement ¶ 8, ECF No. 107-1; one of MLI's "Campus Director[s]," Mr. Ronald Harman, testified that Mr. Nunez managed various sub-departments at MLI's Jackson Heights campus, *id.* ¶¶ 21-22, including recruiting, student records, and the "IT department," *id.* ¶ 22; Mr. Ashraf Mourad, the former "financial aid director" at that campus, testified that Plaintiff "did everything to basically run Jackson Heights," *id.* ¶ 43; and other witnesses testified that Mr. Nunez trained and evaluated employees, *id.* ¶ 64, attended "directors['] meetings," *id.* ¶ 90, made recommendations regarding pay raises, *id.* ¶ 48; and played

7

important roles in recruiting students to MLI, both as a supervisor and on his own account, *id.* ¶¶ 96-99.

On the other side of the ledger, titles are not dispositive in the exemption analysis. 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee."). And Plaintiff attests that his role was "straight forward," "routine," "secretarial," and "not difficult," Nunez Decl. ¶¶ 43, 44, 45, 58, and that he "monitor[ed] attendance," and performed "other regular office tasks," *id.* ¶ 70, including inputting "daily attendance sheets," *id.* ¶ 46, preparing "awards for perfect attendance students," *id.*, confirming that "student [financial aid] folders contained all necessary information," *id.* ¶ 50, reviewing "recruiter check list[s]," *id.* ¶ 59, getting supplies and ordering student books, *id.* ¶¶ 51-53, taking minutes at management meetings, *id.* ¶ 55, and meeting with students to ensure they "filled out [financial aid] application[s] correctly," *id.* ¶¶ 36-38. Two witnesses submitted affidavits attesting that Mr. Nunez performed "secretarial" work that did not involve significant "decision-making," Declaration of Janet Minas ¶¶ 5-6, ECF No. 108-3 ("Minas Decl."); Declaration of Carol Ortega ¶ 9, ECF No. 108-4 ("Ortega Decl."), and that his job duties included procuring supplies and assisting students with "paper work," Ortega Decl.

¶ 9, and the preparation of documentation and "data" in connection with a government audit, Minas Decl. ¶¶ 14-16.[6]

Thus, the record reveals evidence that Plaintiff performed a mix of routine and managerial duties. The question is which set of duties were his "primary" ones. This involves an inquiry into the amount of time Plaintiff spent performing each of the various tasks described above. *See, e.g.*, 29 C.F.R. § 541.700(b) ("[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."). "The question of how the [employees] spent their working time," however, "is a question of fact" which is not appropriate for summary judgment. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Indergit v. Rite Aid Corp.*, Nos. 08-CV-9361, 08-CV-11364, 2010 WL 1327242, at *8 (S.D.N.Y. Mar. 31, 2010). So, too, with

---

[6] There also is some dispute as to whether Mr. Nunez exercised discretion or supervisory responsibility. *Compare* Nunez Decl. ¶ 42 (Plaintiff did not "make determinations as to which students received Financial Aid"); *id.* ¶ 69 (Mr. Harmon "never gave me any significant leeway," "I did not work independently from him," and "I reported daily to [him]"); *id.* ¶ 88 (no "independent judgment" when helping students fill out financial-aid applications); Minas Decl. ¶ 5 (Mr. Nunez "did not engage in the exercise of discretion and independent judgment with respect to matters of significance"); *id.* ¶ 6 (Mr. Nunez was "not involved in the decision-making process" as it related to financial aid); *id.* ¶ 14 (Mr. Nunez had no "decision/policy-making authority as it related to the government audit"); Ortega Decl. ¶ 10 (Mr. Nunez was not "given the authority to be involved in any significant decision making") *with* Defs' 56.1 Statement ¶ 49 (Mr. Nunez confirmed at deposition he had "free rein" with respect to government-audit projects); *id.* ¶ 54 (Mr. Harmon testified that he gave Mr. Nunez "the opportunity to function as a general manager").

regards to the conflicting witness testimony, which requires credibility assessments. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (credibility assessments are "not for the court on summary judgment" (internal quotations omitted)). Ultimately, these are questions for trial.

The record does contain several datapoints that suggest Mr. Nunez's primary duties were more managerial than routine, and that he did in fact possess meaningful discretion and responsibility during his employment at MLI.  This evidence includes email correspondence indicating that Mr. Nunez reported directly to defendant Boris Davidoff, MLI's CEO, Defs' Ex. R, ECF No. 107-5; correspondence between MLI and government auditors indicating that Mr. Nunez had significant involvement in an important government audit, *id.* Ex. O; organizational charts positioning Mr. Nunez above fifteen other employees across six sub-departments (and just three rungs below MLI's CEO), *id.* Ex. G; and Mr. Nunez's own resume, which represents that he "[m]anage[d] staff, teachers and supervise[d] Financial Aid Officers" at MLI, *id.* Ex. H.  But the ultimate significance of this evidence is to be determined at trial.

**B.   Retaliation**

As previewed above, Plaintiff also claims that Defendants' state-court lawsuits violate the anti-retaliation provisions of the FLSA and the NYLL.  The FLSA's anti-

10

retaliation provision provides that it "shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3).  To establish a claim for retaliation under the FLSA, a plaintiff must establish "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protective activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d. Cir. 2010).[7]

        At this point, the Court is unpersuaded that Defendants' state-court lawsuits could constitute actionable retaliation as a matter of law.  The First Amendment generally protects the right of private citizens to file lawsuits.  *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.").  Courts have carved out an exception where the lawsuit in question was "groundless" or "baseless," *see, e.g.*, *Shi-Hsin Chang v. Phoenix Satellite Television (U.S.), Inc.*, No.

---

        [7] "The elements of a retaliation claim under NYLL and FLSA are comparable," so the Court considers them as one.  *Romero v. Bestcare Mgmt., Inc.*, No. 15-CV-7397, 2018 WL 1702001, at *5 n.10 (E.D.N.Y. Feb. 28, 2018) (citing cases); *see also* NYLL § 215(1)(a).

14-CV-2686, 2014 WL 5017838, at *5 (S.D.N.Y. Sept. 22, 2014)
(stating that "retaliatory lawsuits, if baseless, are potential
violations" of Title VII); *Torres v. Gristede's Operating Corp.*,
628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) (stating, in FLSA
action, that "[b]ad faith or groundless . . . legal proceedings
against employees who assert statutory rights are actionable
retaliation precisely because of their *in terrorem* effect");
*Kreinek v. Showbran Photo, Inc.*, 02-CV-1172, 2003 WL 22339268,
at *6 (S.D.N.Y. Oct 4, 2003) (courts in the Second Circuit have
"expressly refused to adopt a rule stating that counterclaims,
or any other legal cause of action cannot, as a matter of law,
constitute retaliation in violation of the employment
discrimination laws" (internal quotations omitted)).  But it is
far from clear that Defendants' state-court complaints fit this
definition, given Plaintiff's admission that he engaged in a
sexual relationship with the student in question.  *See* Nunez
Decl. ¶ 94.

        Should the merits of Defendants' state-court lawsuits
rise above the "baseless" threshold, the Court would be faced
with an open question in this Circuit:  whether a non-frivolous
lawsuit may qualify as actionable retaliation under the FLSA.
*Cf. Rodriguez v. Nat'l Golf Links of Am.*, No. 19-CV-7052, 2020
WL 3051559, at *5 (E.D.N.Y. June 8, 2020) ("To date, the Second
Circuit has yet to rule on the circumstances, if any, under

which a meritorious lawsuit could constitute an adverse employment action for the purposes of a former employee's FLSA retaliation claim."); *Lawrence v. NYC Med. Prac., P.C.*, No. 18-CV-8649, 2019 WL 4194576, at *9 (S.D.N.Y. Sept. 3, 2019) (whether "an employee can claim retaliation because he or she has been sued in a well-founded lawsuit is an open question"). The Court need not reach this question now, though, because Defendants did not raise it in their opening brief. *See, e.g.*, *Haywin Textile Prods., Inc. v. Int'l Fin. Inv.*, 137 F. Supp. 2d 431, 434 n.2 (S.D.N.Y. 2001) ("It is well settled that courts should not consider arguments first raised in a party's reply brief which afford no opportunity for response from the opposing party.").[8]

Instead, Defendants argue only one discrete point: that Plaintiff failed to establish he suffered harm to his employment or career prospects as a result of the state-court lawsuit, as they claim is required to establish an "employment action disadvantaging the plaintiff." Plaintiff does not contend that he has shown employment-specific harm.

_____

[8] To the extent Defendants intended to raise this argument through a footnote in their opening brief — which is far from obvious — the Court need not consider it. *See, e.g.*, *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 n.1 (S.D.N.Y. 2014) ("It is well settled . . . that a court need not consider arguments relegated to footnotes . . . .").

This brings another question to the fore:  whether plaintiffs asserting anti-retaliation claims under the FLSA must show that a defendant not only took retaliatory action, but that the action caused employment-specific harm.  This, too, is an open question in this Circuit.  But applying the Supreme Court's reasoning in *Burlington Northern & Santa Fe Railway Corporation v. White*, which read the similar retaliation provision in Title VII to encompass any action that "well might have dissuaded a reasonable worker from making or supporting" similar charges, 548 U.S. 53, 68 (2006), I see no absolute requirement that plaintiffs demonstrate employment-specific harm when asserting retaliation claims under the FLSA.  *Cf. Darveau v. Detecon, Inc.*, 515 F.3d 334, 341-42 (4th Cir. 2008) (reversing dismissal of FLSA retaliation claim because district court's conclusion that retaliatory lawsuit must cause harm in the form of "an ultimate employment decision related to hiring, leave, discharge, promotion, or compensation" was based on "outdated . . . precedent"); *Jian Zhong Li v. Oliver King Enters., Inc.*, No. 14-CV-9293, 2015 WL 4643145, at *3 (S.D.N.Y. 2015) ("Courts have held that . . . instituting bad faith litigation against [an] employee constitutes actionable retaliation."); *Torres*, 628 F. Supp. 2d at 472 (former employee established prima facie case of retaliation under the FLSA because defendant filed baseless counterclaims in federal action).  Defendants suggest no reason

14

why other types of harm, including the need to expend resources defending a potentially retaliatory lawsuit, would not suffice. Thus, I decline to adopt Defendants' contention that employment-specific harm need be shown as a matter of law.[9]

For the reasons stated above, the Court denies Defendants' motion for summary judgment on Plaintiff's retaliation claim. At trial, Defendants will of course be free to press the issue of whether their state-court lawsuit constituted actionable retaliation as a matter of law.

### IV.   Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   Brooklyn, New York
         March 29, 2021

---

[9] Defendants rely primarily on *Calderon v. Mullarkey Realty, LLC*, No. 14-CV-2616, 2018 WL 2871834 (E.D.N.Y. June 10, 2018), which granted summary judgment on a retaliation claim under the FLSA in part because the plaintiff "presented no evidence that [it] had any impact on his employment prospects or that Plaintiff even sought work after Defendants terminated him." *Id.* at *16. But *Calderon* did not say explicitly that harm to employment prospects is a condition precedent to an FLSA retaliation claim. Moreover, *Calderon* relied on *Patel v. Lutheran Med. Ctr., Inc.*, 753 F. Supp. 1070, 1074 (E.D.N.Y. 1990), which predated the Supreme Court's decision in *Burlington Northern*.